Chief Justice Robertson
delivered the opinion of the Court.
This is a suit in chancery, instituted' in .Time, 1827, by Elliot Headington, against Viis mother-in-law, Maria Berry, .(formerly Headington) as devisee and executrix, of Joshua Headington.
The testator died in December, 1819, and his will was proved in the county court of Jefferson, in June, 1820.
He devised the whole of his estate to his wife, Maria, and to his two children, Elliot and Caroline Matilda Headington.
As much of the devises to them, as will be néces-sary to explain the nature of the controversy, now to be determined, is in the following words, copied after a specific devise of a slave, (Paul; and a town lot to Elliot, and another specific devise, of another- lot, to Caroline Matilda.
“I give and devise, to my wife, Maria Headington, to her, and her heirs and assigns forever, the residue of the property I now live on, being.fifty eight feet front, on the third Main street, and extending back* the same width, two hundred and twenty feet,togeth*. er, with all the improvements, thefeon, and the appurtenances thereto belonging,orin any wise appertaining.,
“X also give and devise, to my said beloved wife. Maria, apd to her heirs and assigns forever, all nrg- *316 slaves, except the said boy, Paul; also, all my household and kitchen furniture, and, also, all my personal-estate, of every kind, except the debts due me; but this devise and bequest, is on these conditions:
“1st. That my said wife, her heirs or assigns, shall decently, and liberally maintain, clothe and educate, my said daughter, Caroline, out of the profits of the estate mentioned, and given in this devise and bequest, until the said Caroline, shall marry or arrive at the age of twenty-one years, or die before that time.
“2d. That my said wife,- Maria, her heirs or assigns, Shall allow, and pay to my said son, Elliot Heading-ton, the sum of $170, until he shall arrivé at the age of twenty-one years,if he shall so long live, in addition, to the rent of $139, coming from said Bright, under said lease, which shall be applied to the boarding, clothing and educating, of the said Elliot, until he shall arrive at the age of sixteen years, (at which time, he directed that that he should be bound out) and after that time, as much thereof, as shall be, necessary, shall be applied in furnishing him in decent clothing.
“These two conditions are annexed to the said devise to my said beloved wife, Maria, and shall be ful-, filled and complied with, by her, her heirs or assigns.”
He then devised to his executrix, his livery stable, lot, and all accounts and debts due to him as a fund for the payment of his debtsfand also devised to her the rent of the lots, bequeathed to Elliot and Caroline, to aid her in the maintenance of the one, and in the payment of the pecuniary legacy to the other.
. Elliot claims, in his bill, an annuity of $170. The answer, after submitting to- the court the question, whether the devise of $170 to Elliot, be a sum in gross, oran annuity until twenty-one,or until sixteen, shews receipts for the payment of the $130 rent, and also, of the $170, for two years, successively; and alleges, that the debts due by the testator, exceeded the fund provided by the will, for their payment, by upwards of $2000; of which $1690, had been paid by the appellant, out of her own estate, before a settlement of her accounts, by the county court, (which, settlement is exhibited, to shew the fact) $400 had *317 been paid since the settlement; and, therefore,she in-«fists, that Elliot had received as much as he was entitled to:
1st. Because, if the devise to him, of $170 should be construed to be an annuity, it should not extend beyond the time, when he reached sixteen years of age, (which was in 1823) and when he was “bound out.”
And, 2d. Because, if he be entitled to an annuity, until he shall attain twenty-one years of age, he should beheld liable for his just proportion of the amount of debts which she had paid, exceeding the fund appropriated for their extinguishment by the will.
By an amended answer, she shews that, since the filing of the original, German Musson had recovered a judgment against her, as executrix, for $976, with interest from the 1st. of December, 1820, and that a fieri facias, on said judgment, had been levied on all the slaves and personalty devised -to her, and that they had all been sold to satisfy it.
Afterwards, another amended answer was filed, charging, that, in virtue of a decree, obtained by the bank of Kentucky, against Elli.ot and Caroline Matilda Headington, and others, in 1825, the lots devised to Elliot and Caroline, had been sold, whereby Mrs. Berry had lost the benefit of the annual profit's, dev.ised to her to assist her to perform the duties, injoin-ed on her in relation to their maintenance, by the will; that Elliot’s lot was purchased at much less than its value, by a friend for his benefit; that a suit in chancery was pending, in the name of Cleaveland vs. herself, Elliot anti Caroline Headington, in which she had made her answer a cross bill, against Elliot and others; and she, therefore, prays that the two cases be consolidated, and her amended- answer, in this case, considered a cross bill against Elliot Head-ington.
This amendment was filed, at the June term, 1827; and at the same term, the court rendered a decree, in which, after decreeing that Elliot, was entitled to an annuity, of $170, until he had attained twenty-one years of- age, (which then had done) and ascertaining the amount due to him accordingly, the cir. *318 cuit court decreed a sale of the lot, devised* to Mre„ Headington, for the purpose of raising a fund sufficient to pay the amount decreed to Elliot.
iieviso to son. ‘that there bo allowed, and paid to him sum of $170, until he shall arrive at ago of 21 years, construed to bo annuity {ill 21.
From this decree she appealed.
Elliot is entitled, by the will, either to an annuity of $170, until he should become twenty-one years old, or only to the gross sum of $¡170; If he be entitled to an annuity, it must cóntinue until he shall be twenty-one years old. . The expression in the will is, ‘‘until he shall arrive at twenty-oneyears of age.”
The only doubt which we feel, is, whether the de-. vise of $170, was intended as a gross sum, which, together with the $ 130, which was certainly a gross sum, should be paid to Elliot in distributive portions, until he should reach twenty-one years of age, or whether the $170, were intended to be paid to him annually. An examination of the. will, so far from removing, will tend to increase the doubt, which the foregoing extracts from it, leave on the mind.
It is sufficient, however, to state that we are inclined to concur in the construction of the circuit court, without detailing the various and very minute considerations, which have contributed to this conciu-clusion. The fact that the appellant, by, her conduct, seemed, practically, to admit that the $170, were devised as an annuity, is entitled to some influence-And we should not reverse .the construction of the* circuit court, unless we could perceive reasons which-wouid preponderate against that construction.
We are inclined,, also, to the opinion, that the.condition attached to the devise to the appellant, should be construed to extend to all the estate, real, and personal, devised to her in her own right. The peculiar phraseology and punctuation of that part of the will, which devises property to her, might create some doubt whether there were not two devises to her: instead of one, and consequently, whether the condi| tion should not be restricted to the last devise immediately preceding it. if the house and lot devised to her, be considered a distinct devise, and the remainder of the - property contained in thé devise, commencing with the words,“l also give and devise^’1- *319 áte. be considered as another and separate devise, there would be no doubt that the condition attached, would apply only to the property mentioned in the last devise. For the language of it is, “but this devise (meaning the precedent devise) is ori.these conditions.”
Non-peeformance of condition, annexed to estate in will, construed to be no forfeiture ofestate.
But we think that it is most consistent not only with the extracts from the will, which have been quoted, but with the whole of the will, to construe the condition as applicable to the whole of the estate which was devised to the appellant, in so much of the will as preceded the insertion of the condition. And we are somewhat fortified in this construction, by the interpretation which we have determined to put upon the condition itself. We consider it to be neither technically a condition in deed, nor a limitation or condition in law. it was not intended by the testator, that the estate should be forfeited by the non-performance of the conditions imposed on the devisee. Such a construction would do injustice to the generous feelings of the testatorj and would violate some of the rules prescribed for the liberal interpretation of wills.
The testator intended that the insertion of the com ditions should operate “m terrorem? and thereby increase the security for a faithful fulfilment of them. And he intended also, that the maintenance of his daughter, and the annuity to his son, should be a charge on the estate devised to his wife.
There was, therefore, no error, in decreeing to Elliot Headington an annuity of $170, nor in decreeing the sale oí the lot defused to the appellant, if the decree be in other respects free from error.
We perceive no error in the amount decreed to Elliot, if he was entitled, under all the circumstances of the case, to the full annuity.
But we cannot concur with the circuit court, in the opinion that there is nothing in the record which should either extinguish or diminish the annuity.
• The intention of the testator is' obvious. He intended that his two children should enjoy the specific legacies given to them, and the maintenance provided *320 for them, and that his wife should enjoy the whole estate devised to her, subject only to the charge of maintaining his daughter, and paying the annuity to his son. He had no doubt that the fund provided for payment of his debts, would be amply sufficient for that purpose. To secure the inviolable enjoyment of the lagacies which he distributed, and to prevent encroachment on any of them, he set apart a fund to pay his debts. He evidently desired, therefore, as much that his wife should enjoy the whole estate devised to her, as that his children should retain all that he gave to them. And he was surely as desirous that his wife should have the full benefit of the-entire legacy to her, subject only to the express charge upon it, as he was that Elliot should receive $¡170 a year, out of the proceeds of that legacy. He directed her to pay him the annuity, because she would hold the estate devised to her. And he thus equalized the distribution of his estate, according to his own judgment and wishes, believing and intending that each of the recipients of his bounty should enjoy exactly what was bestowed on each, and that neither of them should have more nor less.
if he had foreseen that his widow would be deprived of the whole estate devised to her, by the claims of his creditors, would he have required her to pay to Elliot $170 a year? Certainly not. He intended that the $170 should be paid out of the proceeds of the rents devised to Elliot, and of the profits of the estate devised to the appellant. It is a charge “in rm” and not “in personam.'1'1 If the whole of this fund bad been swallowed up by an earthquake or absorbed by his debts, there could be no annuity, because there would be nothing remaining, on which it was charged as a lien, and out of which it could be paid.
It results with equal certainty, that if only a part of the estate devised to the appellant be taken from her, there should be a correspondent abatement in the annuity. The estate devised to her is the consideration of the annuity devised to Elliot. Therefore, as the consideration fails or depreciates, so must the annuity cease, of be diminished in the same ratio.
Besides, as the debts were a charge on all the legacies, if they have been made entirely or chiefly out of one, the. *321 others are bound to contribute ‘•‘"pro rata.,‘> Such'a Con-straction alone, can effectuate the designs of the tator, as to the equality of the distribution of éstate, or of whatever shall remain of it; any other ■construction might totally derange the will and frustrate theplansof the testator.
, fo^paytnont’ and devise of estate,charg-annuity^ debts extin-guish tieht croachor^de-vise, annuity construed to ¿¡>¿^¡’ropor*
In construing wills, the intention of the testator, whenever it can be ascertained, is the cardinal rule, "and must govern. All other rules are only subsidiary to this end. Having ascertained the intention'of the testator in this case, the rule is fixed for determining the .rights and liabilities of the parties.
In the first place then, if by sale or otherwise, appellant has been deprived of the- benefit of the rents of the lot of Elliot, which were devised to her to aid her in paying his annuity-, so much as she shall have thus lost, must be deducted from the $170, from the time of her deprivation. For example, if the annuai value of the lot were $50, she should be liable only for .$120 a year, after she was deprived the rent. If the lot had been worth $170 a year, it would be manifest that the testator, in devising the-■profits to the appellant, and directing her to pay to Elliot $J7Q annually, would have, intended that she ■should not be chargedWith the annuity, in consideration of the property which he devised absolutely to her, but that he made its payment a charge on that ■property only to secure it. Consequently, if, as we suppose is the fact, the rent of the lot were less than $170 a year, the same rule of construction shows that the testator intended that she should pay out the profits of her own estate, so much of the annuity, and so much only, as should remain, after appropriating the rent of Elliot’s lot.
In the next place, after deducting the rent of Elliot’s ■lot, from the time when the appellant ceased to receive it, if-it were sold during the running of the annuity, the remainder of the annuity must be ascertained by the following process. If the debts exceed the fund set apart by the will, for the payment of them, the excess should be charged on all the legacies in proportion to their value, and whatever shall then remain to the appellant, of the property devised to her, shall *322 -determine the amount of the annuity. Forexampls', if she. shall retain one half of the value of the estate . devised to her absolutely, she shall be liable for one half of what shall remain of the annuity of $170, ■after deducting, according to the rule prescribed, the value of the rent of Elliot’s lot; for instance, if the rent be $50 a year, the annuity chargeable on the tvhole of Mrs. 'Headington’s legacy, would be $120, and'if one half of the value of that legacy be absorbed by debts, she would be responsible for only §‘60 a year, from the time of its absorption.
•The legacies are all specific, unlc.-s the annuity be a general legacy. As it would seem more accordant with the testator’s will, to consider the annuity, like' all the other devises, specific, it will be so considered; ■and perhaps, as it is secured by a lien, it is strictly so. Then, in settling the estate, the court will not be perplexed by the abstruse questions which sometimes arise, as to general-aud specific legacies, and the ■marshaling of assets and of legacies. If the debts • exceed the'-fund appropriated by the will, for extinguishing them, the excess shall be charged, as it shall have been paid, to each legatee, in proportion to (he ■ legacy to each, and the annuity for that year reduced -in a ratio correspondent with the reduction of the appcllani’slegacy.
If 'any of the property of either of the legatees shall have : been, bona fide, sold for payment-of the ■ testator’s debts, but shall be held-in (rust for the legatee, by the,purchaser,.it should be considered as belonging still to such legatee, who, therefore, should have credit only for w'hat the sale produced, and be charged in the settlement, with the value of the property so sold and beneficially retained. Our re* •searches have not enabled us to find a case like ihis. We have, therefore, been compelled to decide it ‘-without the hght of direct authority; and in doing so, we have been governed by what we have considered "the reason of the case, and the intention of the '•'testator..
The record, as it stands, shows that the appellant ;paid debts to an amount exceeding the proceeds of the fund devised to her for payment of debts. The *323 '«ettlcment by the county court is, prima facie, evi■dence. It has not been impeached. But on its face, it is not perfectly satisfactory. Nor can it escape notice, that there is something singular, in the fact,. that the slaves and all the personal property devised-' to the appellant, were sold-' to pay Musson’s debt,,. But the record, as it now is, shows-that- the appellant-ought not to be held liable for the full'amount of the-annuity. To ascertain the precise amount'for which ; she should be made responsible, will, under any circumstances, be difficult. It would now be impossible. . The case has been carelessly or unskilfully prepared.! Before there can be a just decree, facts must be ascertained and tried, which either do not now appear, or have not been investigated. This investigation was invited by the cross bill, which was not noticed. Either by compelling an answer to that, or in some, other mode, the court should’have proceeded to a full settlement of all the. accounts. jncident to the estate of the testator, and'to the interests of each of the devisees. Until this shall-have been done, there can be no decree which, can approach the justice of the case.
Haggin and'Richardson, for appellants; Denny, for.^ appellee.
Wherefore, the decree- is. reversed,, and the cause remanded for an answer to the cross bill of the appellant, or for such other proceedings as shall enable the court to make a full and‘final settlement between the parties, according to the instructions and principiéis,, contained in this opinion,.